Benjamin Heikali (SBN 307466)
**FARUQI & FARUQI, LLP**
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: (424) 256-2884
Facsimile: (424) 256-2885
E-mail:   bheikali@faruqilaw.com

[Additional Captions on Signature Page]

*Attorney for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

MARK BREYER, Individually and
on Behalf of All Others Similarly
Situated,

        Plaintiff,

    v.

PCM, INC., FRANK F. KHULUSI,
PAUL C. HEESCHEN, THOMAS A.
MALOOF, and RONALD B. RECK,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.  2:19-cv-06808

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

**JURY TRIAL DEMANDED**

Plaintiff Mark Breyer ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      This action is brought as a class action by Plaintiff on behalf of himself and the other public holders of the common stock of PCM, Inc. ("PCMI" or the "Company") against the Company and the members of the Company's board of directors (collectively, the "Board" or "Individual Defendants," and, together with PCMI, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), SEC Rule 14a-9, 17 C.F.R. § 240.14a-9, and Regulation G, 17 C.F.R. § 244.100, in connection with the proposed merger (the "Proposed Transaction") between PCMI and Insight Enterprises, Inc. ("Insight").

2.      On June 23, 2019, the Board caused the Company to enter into an agreement and plan of merger ("Merger Agreement"), pursuant to which the Company's shareholders stand to receive $35.00 in cash for each share of PCMI stock they own (the "Merger Consideration").

3.      On July 16, 2019, in order to convince PCMI shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading Form PREM14A Preliminary Proxy Statement with the Securities and Exchange Commission ("SEC"), in violation of Sections 14(a) and 20(a) of the Exchange Act.  The materially incomplete and misleading Proxy violates both Regulation G (17 C.F.R. § 244.100) and SEC Rule 14a-9 (17 C.F.R. § 240.14a-9), each of which constitutes a violation of Section 14(a) and 20(a) of the Exchange Act.  On July 26, 2019, the Company filed a Form DEFM14A Definitive Proxy Statement (the "Proxy") that did not correct the materially incomplete and

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

misleading nature of the preliminary proxy.

4.     While touting the fairness of the Merger Consideration to the Company's shareholders in the Proxy, Defendants have failed to disclose certain material information that is necessary for shareholders to properly assess the fairness of the Proposed Transaction, thereby violating SEC rules and regulations and rendering certain statements in the Proxy materially incomplete and misleading.

5.     In particular, the Proxy contains materially incomplete and misleading information concerning: (i) the financial projections for the Company that were prepared by the Company and relied on by Defendants in recommending that PCMI shareholders vote in favor of the Proposed Transaction; and (ii) the summary of certain valuation analyses conducted by PCMI's financial advisor, B. Riley FBR, Inc. ("B. Riley") in support of its opinion that the Merger Consideration is fair to shareholders, on which the Board relied.

6.     It is imperative that the material information that has been omitted from the Proxy is disclosed prior to the forthcoming vote to allow the Company's shareholders to make an informed decision regarding the Proposed Transaction.

7.     For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act, based on Defendants' violation of (i) Regulation G (17 C.F.R. § 244.100) and (ii) Rule 14a-9 (17 C.F.R. § 240.14a-9).  Plaintiff seeks to enjoin Defendants from holding the shareholder vote on the Proposed Transaction and taking any steps to consummate the Proposed Transaction unless, and until, the material information discussed below is disclosed to PCMI shareholders sufficiently in advance of the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

- 2 -
**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act.

9.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

10.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because PCMI maintains its principal executive offices in this District.

## PARTIES

11.     Plaintiff is, and at all relevant times has been, a holder of PCMI common stock.

12.     Defendant PCMI is incorporated in Delaware and maintains its principal executive offices at 1940 East Mariposa Avenue, El Segundo, California 90245.  The Company's common stock trades on the NASDAQ under the ticker symbol "PCMI."

13.     Individual Defendant Frank F. Khulusi is PCMI's Chief Executive Officer and Chairman and has been a director of PCMI at all relevant times.

14.     Individual Defendant Paul C. Heeschen has been a director of PCMI at all relevant times.

15.     Individual Defendant Thomas A. Maloof has been a director of PCMI

- 3 -

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

1    at all relevant times.

2       16.    Individual Defendant Ronald B. Reck has been a director of PCMI at
3    all relevant times.

4       17.    The Individual Defendants referred to in paragraphs 13-16 are
5    collectively referred to herein as the "Individual Defendants" and/or the "Board."

6              **CLASS ACTION ALLEGATIONS**

7       18.    Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf
8    of himself and the other public shareholders of PCMI (the "Class"). Excluded from
9    the Class are Defendants herein and any person, firm, trust, corporation, or other
10   entity related to or affiliated with any Defendant.

11      19.    This action is properly maintainable as a class action because:

12             a.    The Class is so numerous that joinder of all members is
13      impracticable. As of July 26, 2019, there were approximately 12,000,000
14      shares of PCMI common stock outstanding, held by hundreds of individuals
15      and entities scattered throughout the country. The actual number of public
16      shareholders of PCMI will be ascertained through discovery;

17             b.    There are questions of law and fact that are common to the Class
18      that predominate over any questions affecting only individual members,
19      including the following:

20                  i)    whether Defendants disclosed material information that
21                       includes non-GAAP financial measures without providing
22                       a reconciliation of the same non-GAAP financial measures
23                       to their most directly comparable GAAP equivalent in
24                       violation of Section 14(a) of the Exchange Act;

25                  ii)   whether Defendants have misrepresented or omitted
26                       material information concerning the Proposed Transaction

27

28
                              - 4 -
     **CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a)**
     **AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

in the Proxy in violation of Section 14(a) of the Exchange Act;

  iii) whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

  iv) whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to vote their shares regarding the Proposed Transaction based on the materially incomplete and misleading Proxy.

  c. Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

  d. Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

  e. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

  f. Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

  g. A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## SUBSTANTIVE ALLEGATIONS

### I. The Proposed Transaction

  20. PCMI is a multi-vendor provider of technology solutions, including hardware products, software and services, offered through a dedicated sales force,

- 5 -

ecommerce channels and technology service teams.    The Company offers comprehensive solutions incorporating leading products and services across a variety of technology practices and platforms such as cloud, security, data center, networking, collaboration and mobility.

21.    On June 24, 2019, PCMI and Insight issued a joint press release announcing the Proposed Transaction, which states in pertinent part:

> TEMPE, Ariz. & EL SEGUNDO, Calif.--(BUSINESS WIRE)--Insight Enterprises (Nasdaq: NSIT), the global provider of Insight Intelligent Technology Solutions™ for organizations of all sizes, ("Insight"), and PCM, Inc. (Nasdaq: PCMI), a provider of IT products and services ("PCM"), have entered into an agreement under which Insight will acquire PCM for $35 per share, representing a 36% premium to its 1-month average closing share price as of Friday, June 21, 2019. The transaction implies an enterprise value of approximately $581 million (including cash and debt acquired).
>
> PCM, based in El Segundo, California, is a provider of multi-vendor technology offerings, including hardware, software and services to small, mid-sized and corporate/enterprise commercial clients, state, local and federal governments and educational institutions across the United States, Canada and the United Kingdom. PCM has offices in 40 locations across these geographies and has more than 4,000 teammates, including more than 2,700 client-facing teammates in sales, technical and service delivery roles.
>
> "Over the past five years, Insight has made significant progress, transforming our business from a value-added reseller to a well-respected global solutions provider with deep expertise across technology areas that provide our clients with significant value. Together with PCM, we will be even better positioned to capitalize on our solution area investments through the addition of more technical and sales resources and access to thousands of new clients, especially in the mid-market and corporate client segments," said Ken Lamneck, CEO of Insight.
>
> The combination of the two organizations extends Insight's reach into

- 6 -

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

areas where clients need help most: positioning their businesses for future growth, transforming and securing their data platforms, creating modern and mobile experiences for their workforce and optimizing the procurement of technology. Together, the combined organization will be able to offer partners an even stronger salesforce globally, with increased footprints in North America and the United Kingdom.

"The acquisition of PCM accelerates our opportunity to grow share within our four solution areas: Supply Chain Optimization, Connected Workforce, Cloud + Data Center Transformation and Digital Innovation. The addition of PCM complements our Supply Chain Optimization business, adding scale and clients in the mid-market and corporate space in North America. PCM's services offerings add scale and capabilities to our Connected Workforce and Cloud + Data Center Transformation solution areas and support our strategy to grow our solutions business," said Steve Dodenhoff, president of Insight's North America business.

"This combination offers the ability to provide clients with greater value through the expansive solution offerings of the combined company at a time when customers increasingly need a full-service technology solutions provider to help them transform for the future. Together, we will be able to offer an impressive level of breadth, scale, partnerships and services to meet our clients' needs and exceed their expectations. On behalf of our Board of Directors, we are very pleased to announce this combination which we believe maximizes our shareholders' value, and we look forward to the resulting opportunities that lie ahead for our employees, customers and vendor partners," said Frank Khulusi, chairman and CEO of PCM.

Insight expects to realize annual run-rate cost synergies of approximately $70 million by the end of 2021, with more than 50 percent of this to be realized in the first twelve to eighteen months, primarily related to the consolidation of IT and delivery systems, and real estate and operational integration.

"Insight has a disciplined operating model for evaluating acquisitions and efficiently integrating these businesses post-closing, which has allowed us to deliver well on the financial commitments of acquisitions we have made in the past few years. As we move towards the closing

- 7 -

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a)
AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

and integration of PCM, we expect to deploy these same best practices to deliver the expected synergies in our financial results," stated Glynis Bryan, chief financial officer of Insight. "We believe this transaction will contribute materially to shareholder value as we execute our plans."

Insight expects the acquisition to add more than $0.70 to Adjusted earnings per share in 2020, excluding:

- approximately $25 million in transaction-related costs and restructuring expenses, most of which will be incurred in 2019, and
- intangibles amortization expense.

**Terms and Financing**

The transaction is subject to certain customary closing conditions, including regulatory approvals and approval of PCM's shareholders, and is expected to close in the second half of 2019.
Insight will fund the acquisition through cash on hand and borrowings under a new Asset Based Loan revolving credit facility.

**Advisors**

J.P. Morgan Securities LLC is acting as financial advisor and Sullivan & Cromwell LLP is acting as legal advisor to Insight.

B. Riley FBR, Inc. is acting as financial advisor and Sheppard, Mullin, Richter & Hampton LLP is acting as legal advisor to PCM.

**About Insight**

Today, every business is a technology business. Insight Enterprises Inc. empowers organizations of all sizes with Insight Intelligent Technology Solutions™ and services to maximize the business value of IT. As a Fortune 500-ranked global provider of Digital Innovation, Cloud + Data Center Transformation, Connected Workforce, and Supply Chain Optimization solutions and services, we help clients successfully manage their IT today while transforming for tomorrow. From IT strategy and design to implementation and management, our 7,400+

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

employees help clients innovate and optimize their operations to run business smarter. Discover more at www.insight.com. NSIT

**About PCM**

PCM, through its wholly-owned subsidiaries, is a leading multi-vendor provider of technology solutions, including hardware, software and services to small, medium and enterprise businesses, state, local and federal governments and educational institutions across the United States, Canada and the UK. PCM generated net sales of approximately $2.2 billion in the twelve months ended March 31, 2019.

22.    PCMI is well-positioned for financial growth and the Merger Consideration fails to adequately compensate the Company's shareholders.  It is imperative that Defendants disclose the material information they have omitted from the Proxy, discussed in detail below, so that the Company's shareholders can properly assess the fairness of the Merger Consideration for themselves and make an informed decision concerning whether or not to vote in favor of the Proposed Transaction.

23.    If the false and/or misleading Proxy is not remedied and the Proposed Transaction is consummated, Defendants will directly and proximately have caused damages and actual economic loss (i.e., the difference between the value to be received as a result of the Proposed Transaction and the true value of their shares prior to the merger), in an amount to be determined at trial, to Plaintiff and the Class.

II.    **The Materially Incomplete and Misleading Proxy**

24.    On July 16, 2019, Defendants caused the preliminary proxy to be filed with the SEC in connection with the Proposed Transaction.  The proxy solicits the Company's shareholders to vote in favor of the Proposed Transaction.  Defendants were obligated to carefully review the proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

material misrepresentations or omissions.  However, the proxy misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.  On July 26, 2019, Defendants caused the Proxy to be filed.  The Proxy did not correct the materially incomplete and misleading nature of the preliminary proxy and thereby continues to violate Sections 14(a) and 20(a) of the Exchange Act.

### *The Materiality of Financial Projections*

25.    A company's financial forecasts are material information a board relies on to determine whether to approve a merger transaction and recommend that shareholders vote to approve the transaction.  Here, the Proxy discloses "[i]n connection with the merger, PCM[I] management prepared selected, non-public financial projections, which we refer to as the management projections, for calendar years 2019, 2020 and 2021 and provided such projections to the PCM[I] board of directors, in connection with the consideration by the PCM[I] board of directors of the merger, and to its financial advisor, B. Riley, in connection with its financial analyses . . . ." Proxy 44.

26.    When soliciting proxies from shareholders, a company must furnish the information found in Schedule 14A (codified as 17 C.F.R. § 240.14a-101).  Item 14 of Schedule 14A sets forth the information a company must disclose when soliciting proxies regarding mergers and acquisitions.  In regard to financial information, companies are required to disclose "financial information required by Article 11 of Regulation S-X[,]" which includes Item 10 of Regulation S-K.  *See* Item 14(7)(b)(11) of 17 C.F.R. § 240.14a-101.

27.    Under Item 10 of Regulation S-K, companies are encouraged to disclose "management's projections of future economic performance that have a

- 10 -
**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

reasonable basis and are presented in an appropriate format." 17 C.F.R. § 229.10(b). Although the SEC recognizes the usefulness of disclosing projected financial metrics, the SEC cautions companies to "take care to assure that the choice of items projected is not susceptible of misleading inferences through selective projection of only favorable items." 17 C.F.R. § 229.10(b)(2).

28.   In order to facilitate investor understanding of the Company's financial projections, the SEC provides companies with certain factors "to be considered in formulating and disclosing such projections[,]" including:

> (i) When management chooses to include its projections in a Commission filing, *the disclosures accompanying the projections should facilitate investor understanding of the basis for and limitations of projections*. In this regard investors should be cautioned against attributing undue certainty to management's assessment, and the Commission believes that investors would be aided by a statement indicating management's intention regarding the furnishing of updated projections. *The Commission also believes that investor understanding would be enhanced by disclosure of the assumptions which in management's opinion are most significant to the projections or are the key factors upon which the financial results of the enterprise depend and encourages disclosure of assumptions in a manner that will provide a framework for analysis of the projection.*

> (ii) Management also should consider whether disclosure of the accuracy or inaccuracy of previous projections would provide investors with important insights into the limitations of projections. In this regard, *consideration should be given to presenting the projections in a format that will facilitate subsequent analysis of the reasons for differences between actual and forecast results.* An important benefit may arise from the systematic analysis of variances between projected and actual results on a continuing basis, since such disclosure may highlight for investors the most significant risk and profit-sensitive areas in a business operation.

17 C.F.R. § 229.10(b)(3) (emphasis added).

29.   Here, PCMI's shareholders would clearly find complete and non-misleading financial projections material in deciding how to vote, considering that in making its recommendation that shareholders vote in favor of the Proposed Transaction, the Board specifically relied on the financial forecasts to determine

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

"that the value offered under the merger agreement is more favorable to PCM stockholders than the potential value that might have resulted from remaining an independent public company . . . ." Proxy 32.

30.     As discussed further below, the non-GAAP financial projections here do not provide PCMI's shareholders with a materially complete understanding of the assumptions and key factors considered in developing financial projections, which assumptions, factors and other inputs the Board reviewed.

### The Financial Projections Relied on by the Board

31.     The Proxy discloses that "[i]n connection with the merger, PCM[I] management prepared selected, non-public financial projections, which we refer to as the management projections, for calendar years 2019, 2020 and 2021 and provided such projections to the PCM[I] board of directors, in connection with the consideration by the PCM[I] board of directors of the merger, and to its financial advisor, B. Riley, in connection with its financial analyses . . . ." *Id.* at 44.

32.     The Proxy further discloses that the assumptions used in the financial projections were "prepared in good faith and on a reasonable basis based on the best information available to the preparers at the time of their preparation." *Id.*

33.     The Proxy discloses the financial projections in two portions. One portion was prepared by the Company's management. *Id.* at 45. The second portion was calculated by B. Riley using management's income statement and balance sheet projections for calendar years 2019 through 2021, and using B. Riley's professional judgment, as approved by the Company's management, for calendar years 2022 through 2023. *Id.*

34.     The Proxy goes on to disclose, *inter alia*, forecasted values for projected non-GAAP (Generally Accepted Accounting Principles) financial metrics for 2019 through 2024 for: (1) Adjusted EBITDA; (2) Adjusted EBIT; and (3)

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

unlevered free cash flow, but fails to provide (i) the line items used to calculate these non-GAAP metrics nor (ii) a reconciliation of these non-GAAP projections to the most comparable GAAP measures. *Id.* at 45-46.

35.   The Proxy defines Adjusted EBITDA as "earnings before interest, taxes, depreciation and amortization [excluding] the effect of severance and restructuring related expenses related to PCM[I]'s cost reduction initiatives and stock-based compensation, as well as uncommon, non-recurring or special items." *Id.* at 46.   Nevertheless, the Proxy fails to reconcile Adjusted EBITDA to its most comparable GAAP measure nor disclose the line items used to calculate Adjusted EBITDA, rendering the Proxy materially false and/or misleading. *Id.*

36.   The Proxy defines Adjusted EBIT as "earnings before interest and taxes [excluding] the effect of severance and restructuring related expenses related to PCM[I]'s cost reduction initiatives and stock-based compensation, as well as uncommon, non-recurring or special items." *Id.*   Nevertheless, the Proxy fails to reconcile Adjusted EBIT to its most comparable GAAP measure nor disclose the line items used to calculate Adjusted EBIT, rendering the Proxy materially false and/or misleading. *Id.*

37.   The Proxy defines unlevered free cash flow ("UFCF") as "Adjusted EBITDA (i) less stock-based compensation, (ii) less taxes (applying a 28.0% cash tax rate as provided by PCM[I]), (iii) less capital expenditures and (iv) less the cash impact of net working capital based on information provided by PCM[I]." *Id.* Nevertheless, the Proxy fails to reconcile UFCF to its most comparable GAAP measure nor disclose the line items used to calculate UFCF, rendering the Proxy materially false and/or misleading. *Id.*

38.   Thus, the Proxy's disclosure of these non-GAAP financial forecasts provides an incomplete and materially misleading understanding of the Company's

- 13 -

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

future financial prospects and the inputs and assumptions for which those prospects are based upon. It is clear that those inputs and assumptions were in fact forecasted and utilized in calculating the non-GAAP measures disclosed and relied on by the Board to recommend the Proposed Transaction in violation of Section 14(a) of the Exchange Act.

39.     The financial projections disclosed on pages 45-46 of the Proxy violate Section 14(a) of the Exchange Act because: (i) the use of such forecasted non-GAAP financial measures alone violates SEC Regulation G, as a result of Defendants' failure to reconcile those non-GAAP measures to their closest GAAP equivalent or otherwise disclose the specific financial assumptions and inputs used to calculate the non-GAAP measures; and (ii) they violate SEC Regulation 14a-9 because they are materially misleading, as shareholders are unable to discern the veracity of the financial projections.

40.     As such, this information must be disclosed in order to cure the materially misleading disclosures regarding both the financial projections developed by the Company as well as the projections relied upon by the Company's financial advisors.

***The Financial Projections Violate Regulation G***

41.     The SEC has acknowledged that potential "misleading inferences" are exacerbated when the disclosed information contains non-GAAP financial

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

measures[1] and adopted Regulation G[2] "to ensure that investors and others are not misled by the use of non-GAAP financial measures."[3]

42.    Defendants must comply with Regulation G.  More specifically, the company must disclose the most directly comparable GAAP financial measure and a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP.  17 C.F.R. § 244.100.  This is because the SEC believes "this reconciliation will help investors . . . to better evaluate the non-GAAP financial measures

. . . . [and] more accurately evaluate companies' securities and, in turn, result in a more accurate pricing of securities."[4]

43.    Moreover, the SEC has publicly stated that the use of non-GAAP financial measures can be misleading.[5]  Former SEC Chairwoman Mary Jo White

---

[1]    Non-GAAP financial measures are numerical measures of future financial performance that exclude amounts or are adjusted to effectively exclude amounts that are included in the most directly comparable GAAP measure.  17 C.F.R. § 244.101(a)(1).

[2]    Item 10 of Regulations S-K and S-B were amended to reflect the requirements of Regulation G.

[3]    SEC, *Final Rule: Conditions for Use of Non-GAAP Financial Measures* (Jan. 22, 2003), *available at* https://www.sec.gov/rules/final/33-8176.htm ("SEC, *Final Rule*").

[4]    SEC, *Final Rule.*

[5]    *See, e.g.*, Nicolas Grabar and Sandra Flow, *Non-GAAP Financial Measures: The SEC's Evolving Views*, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measures-the-secs-evolving-views/; Gretchen Morgenson, *Fantasy Math Is Helping Companies Spin Losses Into Profits*, N.Y. Times, Apr. 22, 2016, *available at* http://www.nytimes.com/2016/04/24/business/fantasy-math-is-helping-companies-spin-losses-into-profits.html?_r=0.

- 15 -

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

has stated that the frequent use by publicly traded companies of unique company-specific non-GAAP financial measures (as PCMI included in the Proxy here) implicates the centerpiece of the SEC's disclosures regime:

> In too many cases, the non-GAAP information, which is meant to supplement the GAAP information, has become the key message to investors, crowding out and effectively supplanting the GAAP presentation. Jim Schnurr, our Chief Accountant, Mark Kronforst, our Chief Accountant in the Division of Corporation Finance and I, along with other members of the staff, have spoken out frequently about our concerns to raise the awareness of boards, management and investors. And last month, the staff issued guidance addressing a number of troublesome practices *which can make non-GAAP disclosures misleading*: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures. I also urge again, as I did last December, that appropriate controls be considered and that audit committees carefully oversee their company's use of non-GAAP measures and disclosures.[6]

44.   The SEC has required compliance with Regulation G, including reconciliation requirements, in other merger transactions. *Compare Youku Tudou Inc., et al.*, Correspondence 5 (Jan. 11, 2016) (Issuer arguing that Rule 100(d) of Regulation G does not apply to non-GAAP financials relating to a business combination),[7] *with Youku Tudou Inc., et al.*, SEC Staff Comment Letter 1 (Jan. 20, 2016) ("[The SEC] note[s] that your disclosure of projected financial information is not in response to the requirements of, or pursuant to, Item 1015 of Regulation M-A

---

[6]     Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), *available at* https://www.sec.gov/news/speech/chair-white-icgn-speech.html (emphasis added) (footnotes omitted).

[7]     *Available at* https://www.sec.gov/Archives/edgar/data/1442596/000110465916089133/filename1.htm.

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

and is thus not excepted from Rule 100 of Regulation G.");[8] *see Harbin Electric, Inc.*, Correspondence 29 (Aug. 12, 2011) ("Pursuant to the requirements of Regulation G, we have added a reconciliation of actual and projected EBIT to GAAP net income . . . .").[9]

45.     Compliance with Regulation G is mandatory under Section 14(a), and non-compliance constitutes a violation of Section 14(a).  Thus, in order to bring the Proxy into compliance with Regulation G, Defendants must provide a reconciliation of the non-GAAP financial measures to their respective most comparable GAAP financial measures.

### The Financial Projections are Materially Misleading and Violate SEC Rule 14a-9

46.     In addition to the Proxy's violation of Regulation G, the lack of reconciliation or, at the very least, the line items utilized in calculating the non-

---

[8]     *Available                                                                    at* https://www.sec.gov/Archives/edgar/data/1442596/000000000016062042/ filename1.pdf.

[9]     *Available                                                                    at* https://www.sec.gov/Archives/edgar/data/1266719/000114420411046281/ filename1.htm.  *See also Actel Corp.*, SEC Staff Comment Letter 2 (Oct. 13, 2010) ("Opinion of Actel's Financial Advisor, page 24 . . . This section includes non-GAAP financial measures.  Please revise to provide the disclosure required by Rule 100 of Regulation G."), *available at* https://www.sec.gov/Archives/edgar/ data/907687/000000000010060087/filename1.pdf.  *See also The Spectranetics Corp.*, SEC Staff Comment Letter 1 (July 18, 2017) ("Item 4. The Solicitation or Recommendation Certain Spectranetics Forecasts, page 39 . . . [P]rovide the reconciliation required under Rule 100(a) of Regulation G"), *available at* https://www.sec.gov/Archives/edgar/data/789132/000000000017025180/filename1 .pdf.  The SEC Office of Mergers and Acquisitions applied Regulation G in these transactions, which reflects the SEC's official position.  Any claim that the SEC has officially sanctioned the use of non-GAAP financial forecasts for business combinations when the Board itself created and relied on such non-GAAP forecasts to recommend a transaction such as the Proposed Transaction is incorrect. The SEC's website provides certain unofficial guidance for certain matters, called Compliance and Disclosure Spectranetics ("C&DI's") which through the use of Q&As reflect the views of particular SEC staff and on which certain issuers have in the past claimed an exemption from Regulation G.  The SEC itself expressly disclaims C&DI's as they are not regulations that have been reviewed by the SEC, and the SEC expressly states that they are not binding and should not be relied on. *See* www.sec.gov/divisions/corpfin/cfguidance.shtml.

- 17 -

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

GAAP measures render the financial forecasts disclosed materially misleading, as shareholders are unable to understand the differences between the non-GAAP financial measures and their respective most comparable GAAP financial measures. Nor can shareholders compare the Company's financial prospects with similarly situated companies.

47.     Such projections are necessary to make the non-GAAP projections included in the Proxy not misleading for the reasons discussed above.  Indeed, Defendants acknowledge "Adjusted EBITDA, Adjusted EBIT and unlevered free cash flows are financial measures that are not determined in accordance with accounting principles generally accepted in the United States of America, or GAAP, and therefore should not be considered as a substitute for, financial information presented in compliance with GAAP . . . . Other companies in our industry may calculate Adjusted EBIT, Adjusted EBITDA and unlevered free cash flow differently than we do, which may limit their usefulness as comparative measures." Proxy 46.

48.     As such, financial projections are plainly material, and shareholders would clearly want a complete and non-misleading understanding of those projections.

49.     In order to cure the materially misleading nature of the projections under SEC Rule 14a-9 as a result of the omitted information on pages 45-46, Defendants must provide a reconciliation table of the non-GAAP financial measures to the most comparable GAAP measures.

### *The Materially Misleading Financial Analyses*

50.     The summary of the valuation methodologies utilized by B. Riley including the utilization of certain of the non-GAAP financial projections described above by B. Riley, in connection with its valuation analyses, (*id.* at 37) is misleading

- 18 -

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

in violation of Regulation 14a-9. The opacity concerning the Company's internal projections renders the valuation analyses described below materially incomplete and misleading, particularly as companies formulate non-GAAP metrics differently. Once a proxy discloses internal projections relied upon by the Board, those projections must be complete and accurate.

51.     With respect to B. Riley's *Discounted Cash Flow Analysis*, the Proxy states that B. Riley calculated the Company's estimated unlevered free cash flows using the forecasts provided by the Company's management for calendar years 2019 through 2021 and on B. Riley's own estimates for calendar years 2022 through 2023. *Id.* at 41. B. Riley used exit multiples ranging from 6.5x to 7.5x to calculate the estimated terminal values. *Id.* B. Riley discounted the UFCF and the terminal values using a discount rate of 13.0% to 14.0% based on the Company's weighted average cost of capital. *Id.*

52.     The Proxy does not provide the information B. Riley utilized in the *Discounted Cash Flow Analysis*. The Proxy does not disclose the values B. Riley calculated for the range of terminal values, any of the inputs that went into calculating the Company's weighted average cost of capital, the inputs and assumptions that went into selecting the exit multiple range, what, if any, enterprise value adjustments were made, nor the number of fully diluted shares outstanding.

53.     Since information was omitted, shareholders are unable to discern the veracity of B. Riley's *Discounted Cash Flow Analysis*. Without further disclosure, shareholders are unable to compare B. Riley's calculations with the Company's financial projections. The absence of any single piece of the above information renders B. Riley's *Discounted Cash Flow Analysis* incomplete and misleading. Thus, the Company's shareholders are being materially misled regarding the value of the Company.

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

54.     As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, in a discounted cash flow analysis a banker takes management's projections and then makes several key choices "each of which can significantly affect the final valuation." Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (2006).   Such choices include "the appropriate discount rate, and the terminal value . . . ." *Id*.   As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value . . . . The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness. This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions[.]

*Id.* at 1577-78 (footnotes omitted).

55.     Therefore, in order for PCMI shareholders to become fully informed regarding the fairness of the Merger Consideration, the material omitted information must be disclosed to shareholders.

56.     In sum, the Proxy independently violates both (i) Regulation G, which requires a presentation and reconciliation of any non-GAAP financial to their most directly comparable GAAP equivalent, and (ii) Rule 14a-9, since the material omitted information renders certain statements, discussed above, materially incomplete and misleading.   As the Proxy independently contravenes the SEC rules and regulations, Defendants violated Section 14(a) and Section 20(a) of the Exchange Act by filing the Proxy to garner votes in support of the Proposed Transaction from PCMI shareholders.

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

57.     Absent disclosure of the foregoing material information prior to the special shareholder meeting to vote on the Proposed Transaction, Plaintiff and the other members of the Class will not be able to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

58.     Further, failure to remedy the deficient Proxy and consummate the Proposed Transaction will directly and proximately cause damages and actual economic loss to shareholders (i.e., the difference between the value to be received as a result of the Proposed Transaction and the true value of their shares prior to the merger), in an amount to be determined at trial, to Plaintiff and the Class.

## COUNT I
### (Against All Defendants for Violations of Section 14(a) of the Exchange Act and 17 C.F.R. § 244.100 Promulgated Thereunder)

59.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

60.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

61.     As set forth above, the Proxy omits information required by SEC Regulation G, 17 C.F.R. § 244.100, which independently violates Section 14(a). SEC Regulation G, among other things, requires an issuer that chooses to disclose a non-GAAP measure to provide a presentation of the "most directly comparable"

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

GAAP measure and a reconciliation "by schedule or other clearly understandable method" of the non-GAAP measure to the "most directly comparable" GAAP measure. 17 C.F.R. § 244.100(a).

62. The failure to reconcile the non-GAAP financial measures included in the Proxy violates Regulation G and constitutes a violation of Section 14(a).

63. As a direct and proximate result of the dissemination of the false and/or misleading Proxy Defendants used to recommend that shareholders approve the Proposed Transaction, Plaintiff and the Class will suffer damages and actual economic losses (i.e., the difference between the value they will receive as a result of the Proposed Transaction and the true value of their shares prior to the merger) in an amount to be determined at trial and are entitled to such equitable relief as the Court deems appropriate, including rescissory damages.

## COUNT II
### (Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder)

64. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

65. SEC Rule 14a-9 prohibits the solicitation of shareholder votes in registration statements that contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading[.]" 17 C.F.R. § 240.14a-9(a).

66. Regulation G similarly prohibits the solicitation of shareholder votes by "mak[ing] public a non-GAAP financial measure that, taken together with the information accompanying that measure . . . contains an untrue statement of a material fact or *omits to state a material fact necessary in order to make the presentation of the non-GAAP financial measure . . . not misleading*." 17 C.F.R. §

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

244.100(b) (emphasis added).

67.    Defendants have issued the Proxy with the intention of soliciting shareholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things, the financial projections for the Company.

68.    In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as directors and/or officers, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

69.    The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading.  The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

70.    The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.

71.    The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy.  The preparation of a registration statement by corporate insiders containing materially false or misleading statements or omitting a

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

material fact constitutes negligence.  The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors.  Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

72.   PCMI is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

73.   The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

74.   As a direct and proximate result of the dissemination of the false and/or misleading Proxy Defendants used to recommend that shareholders approve the Proposed Transaction, Plaintiff and the Class will suffer damages and actual economic losses (i.e., the difference between the value they will receive as a result of the Proposed Transaction and the true value of their shares prior to the merger) in an amount to be determined at trial and are entitled to such equitable relief as the Court deems appropriate, including rescissory damages.

### COUNT III
**(Against the Individual Defendants for Violations
of Section 20(a) of the Exchange Act)**

75.   Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

76.   The Individual Defendants acted as controlling persons of PCMI within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a)
AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

their positions as directors and/or officers of PCMI, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

77.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

78.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein and exercised the same.  The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in preparing the Proxy.

79.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

80.     By virtue of the foregoing, the Individual Defendants have violated

- 25 -

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

1  Section 20(a) of the Exchange Act.

2      81.    As set forth above, the Individual Defendants had the ability to exercise

3  control over and did control a person or persons who have each violated Section

4  14(a) and Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of

5  their positions as controlling persons, these Defendants are liable pursuant to Section

6  20(a) of the Exchange Act.  As a direct and proximate result of Individual

7  Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

8                    **PRAYER FOR RELIEF**

9      **WHEREFORE**, Plaintiff prays for judgment and relief as follows:

10      A.    Declaring that this action is properly maintainable as a Class Action

11  and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

12      B.    Enjoining Defendants and all persons acting in concert with them from

13  proceeding with the shareholder vote on the Proposed Transaction or consummating

14  the Proposed Transaction, unless and until the Company discloses the material

15  information discussed above which has been omitted from the Proxy;

16      C.    Directing Defendants to account to Plaintiff and the Class for all

17  damages sustained as a result of their wrongdoing and to award damages arising

18  from proceeding with the Proposed Transaction;

19      D.    Awarding Plaintiff the costs and disbursements of this action, including

20  reasonable attorneys' and expert fees and expenses; and

21      E.    Granting such other and further relief as this Court may deem just and

22  proper.

23                    **JURY DEMAND**

24      Plaintiff demands a trial by jury on all issues so triable.

25  Dated:  August 6, 2019

26                              Respectfully submitted,

27                              **FARUQI & FARUQI, LLP**

28
- 26 -
**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a)
AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

**OF COUNSEL:**

**FARUQI & FARUQI, LLP**

Nadeem Faruqi
James M. Wilson, Jr.
685 Third Ave., 26th Fl.
New York, NY 10017
Telephone: (212) 983-9330
Email: nfaruqi@faruqilaw.com
Email: jwilson@faruqilaw.com

*Counsel for Plaintiff*

By: _/s/ Benjamin Heikali_
Benjamin Heikali, Bar No. 307466
10866 Wilshire Blvd., Suite 1470
Los Angeles, CA 90024
Tel.: (424) 256-2884
Fax: (424) 256-2885
Email: bheikali@faruqilaw.com

*Counsel for Plaintiff*

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**